FILED
IN CLERK'S OFFICE
2004 OCT -6 PM 3: 37

Matthew Haney, as Trustee of the )
Gooseberry Island Trust )
Plaintiff )
 )
v. )
 )
Town of Mashpee, and Ron Bonvie, )
Sharon Sangeleer, William Blaisdell, )
Jonathan Furbush, and )
Scott Goldstein, as they are )
members and are collectively the )
Zoning Board of Appeals of the )
Town of Mashpee )
Defendants )
 )
 )
 )
_____ )

**COMPLAINT**

## INTRODUCTION

1.      This action arises from a final decision of the Defendant, Zoning Board of Appeals of the

Town of Mashpee, denying the Plaintiffs' applications for variances to construct a single-

family dwelling on a vacant 4 Acres Island called Gooseberry Island located in

Popponesset Bay in the Town of Mashpee, Massachusetts (the "Property"). Without the

variances, no viable developmental or economic use of the Property exists. The denial

decision deprived the Plaintiffs of all economically beneficial use and value of their

Property and converts their Island into open space for public benefit. This constitutes a

taking of property without just compensation, in violation of the federal and state

constitutions. Plaintiffs seek damages for the taking under the Fifth Amendment of the United States Constitution, Article 10 of the Massachusetts Declaration of Rights, and damages and attorney's fees under 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

## PARTIES

2. Plaintiff Matthew Haney, trustee of the Gooseberry Island Trust ("Gooseberry") is an individual with a mailing address of P.O. Box 1416, Brookline, Massachusetts 02446.

3. The Defendant Town of Mashpee is a duly constituted municipal body with an address of 16 Great Neck Road North, Mashpee, Massachusetts 02649.

4. The Defendants Ron Bonvie, Sharon Sangeleer, William Blaisdell, Jonathan Furbush, and Scott Goldstein, are the duly appointed members and are collectively the Mashpee Zoning Board of Appeals ("ZBA") and have an address of 16 Great Neck Road North, Mashpee, Massachusetts 02649.

5. Each Defendant is a person within the meaning of 42 U.S.C. § 1983.

6. The acts of Defendants set forth below were performed under color of law.

## JURISDICTION AND VENUE

7. Plaintiffs assert that the Defendants violated the Taking Clause of the Fifth Amendment, as incorporated against the states by the Fourteenth Amendment. The Court has jurisdiction of this claim under 28 U.S.C. § 1331 and 28 U.S.C. § 2201. A remedy is also sought under the Declaratory Judgment Act, U.S.C. § 2201.

8. Plaintiffs further assert claims under two federal statutes: 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

9. Plaintiffs' state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the

2

United States Constitution. The Court has jurisdiction of these claims under 28 U.S.C. § 1367.

10. Venue is proper in this Court because this action concerns property located in the Town of Mashpee, Massachusetts, within the jurisdiction of the District of Massachusetts.

## FACTUAL ALLEGATIONS

## FOR OVER 70 YEARS THE TOWN OF MASHPEE

## HAS DESIRED TO ACQUIRE GOOSEBERRY ISLAND FOR OPEN SPACE

11. The October 18, 1954, Mashpee Town meeting included Article 12 which provided:

> To see if the Town will vote to take by eminent domain, purchase, gift or in any other manner, for purposes of a public park, recreational grounds or for any other public purposes, a certain parcel of marsh and upland, with all the trees, shrubbery and structures thereon, if any, commonly known as Gooseberry Island

12. The article passed at town meeting but due to the Town being in receivership the article needed approval by the State controlled Mashpee Advisory Commission.

13. The Mashpee Advisory Commission withheld approval.

14. The March 7, 1955, Mashpee Town meeting included Article 64 which provided:

> To see if the Town will vote to take by eminent domain, purchase, gift or in any other manner, for purposes of a public park, recreational grounds or any other public purpose, a certain parcel of Marsh and upland, with all the trees, shrubbery and structures thereon, if any, commonly known as Gooseberry Island

15. The article passed at town meeting but due to the Town being in receivership the article needed approval by the State controlled Mashpee Advisory Commission.

16. The Mashpee Advisory Commission withheld approval.

3

17. The Town of Mashpee 1998 Local Comprehensive Plan classified the Subject Property as Lands of Conservation and Recreation Interest.

18. In 2008 the Town of Mashpee classified the Subject Property as a Private Land of Conservation Interest in the Town's Open Space, Conservation and Recreation Plan.

19. At the August 27, 2018 Mashpee Board of Selectman meeting Selectman Gottlieb made a motion to for the Town to place an article on the Fall Town Meeting agenda to take Gooseberry Island by eminent domain as the Town's actions had rendered the island "unbuildable." It was noted this is an environmentally sensitive piece of property, and the town has been expending funds on continued regulatory processes. Legal fees are more than the $65,000 assessed value.

20. The motion did not pass.

21. On August 24, 2020, the Mashpee Board of Selectman voted to add an article on the October Town Meeting warrant to authorize the Town of Mashpee to purchase Gooseberry Island/Subject Property and authorize the Town Manager to enter into Negotiations with the owner for said purchase.

22. The only statements in opposition were by a selectman who felt that the Town did not need to pay for the Subject Property on the basis that the ZBA actions made the property unbuildable.

23. On September 24, 2020, the Mashpee Board of Selectman formally placed an article on the Town Meeting warrant as Article 20 to purchase or obtain by eminent domain the Subject Property.

24. At that same meeting, the Mashpee Board of Selectman voted to support the passage of Article 20 at Town Meeting.

25. On September 17, 2020 The Finance Committee did not recommend approval of Article 20 by a vote of 5-0.

26. On October 19, 2020, the Mashpee Town Meeting voted to indefinitely postpone a vote on Article 20.

27. On November 12, 2020, the Chairman of the Mashpee Conservation Commission criticized the Commission for failing to endorse Article 20 before the October 2020 Town Meeting and the Commission then voted to endorse the acquisition of the Subject Property by eminent domain.

28. As such, the Commission, which has been actively preventing the Plaintiff from developing the Subject Property to reduce its value, has endorsed buying the island immediately.

29. On or about January 2021, the Mashpee Conservation Department submitted an application to the Mashpee Community Preservation Committee "seeking Community Preservation Act funding to purchase Subject Property for the purposes of preserving the island as conservation land/open space."

30. On January 14, 2021, Mashpee Community Preservation Committee met to discuss the funding request of the Mashpee Conservation Department.

31. The Committee voted 5-3-1 to authorize the Committee to acquire an appraisal of Subject Property.

32. The Committee never acquired an appraisal, and the Mashpee Conservation Department withdrew their application due to pending litigation.

**THE TOWN OF MASHPEE MADE A POLICY DECISION TO NOT TO ALLOW THE DEVELOPMENT OF GOOSEBERRY ISLAND IN RETURN FOR THE**

## MASHPEE WAMPANOAG TRIBE RELEASING LAND CLAIMS IN THE TOWN OF MASHPEE

33.    On May 23, 2007, the Mashpee Wampanoag Tribe ("Tribe") obtained federal recognition.

34.    Subsequently, the Defendant Town of Mashpee entered into negotiations for the execution of an intergovernmental agreement with the Tribe governing the relationship between the Town and the Tribe.

35.    Article 1 of the April 7, 2008, Town of Mashpee Special Town Meeting was a request to "authorize[] the board of selectmen to enter into an Inter-Governmental Agreement with the Mashpee Wampanoag Tribe upon such terms and condition as the Selectmen deem advisable and in the best interest of the Town, or take any other action relating thereto."

36.    Article 1 passed.

37.    Article 2 of the April 7, 2008, Town of Mashpee Special Town Meeting was a request to:

> "see if the Town will vote to authorize the Board of Selectmen to convey, grant and/or release to the Mashpee Wampanoag Tribe of Massachusetts (the "Tribe") the Town's title, rights, or interest it and to the following described parcels of real property, to file such petitions with the Massachusetts General Court as may be necessary to effect this conveyance, grant or release, and to execute any and all instruments necessary to convey, grant and for release the Town's title, interest or rights, upon such terms and conditions as the Board of Selectmen shall deem to be in the interest of the Town; provided, that the Town and the Tribe shall have first executed an Inter-Governmental Agreement specifically providing the terms of disposition of the subject title, rights and/or interests:.... **Parcel Seven: The parcel containing 4.6 acres, more or less, identified on Assessors Map 106, located off of Punkhorn Point and Gooseberry Island, currently utilized as a Wampanoag Aquaculture/Shellfish Farm site...** Parcels Seven and Eight are Wampanoag Shellfish Farms located in Popponesset Bay which, have, for several years been cultivated, maintained and harvested by the Tribe pursuant to licenses and permits granted by the Town. The

> Town has agreed in the Intergovernmental Agreement to convey to the Tribe any right, title or interest of the Town in these two parcels for continued aquaculture/ shellfish farm use and/or to support steps necessary for these parcels to be taken into trust for this purpose"

38.    Parcel Seven is the water that surrounds Gooseberry Island/Subject Property and is owned by the Commonwealth of Massachusetts.

39.    Two abutters have Docks in this area.

40.    Counsel for the property owner notified the town they could not legally do what they agreed to do because they did not own the water around Gooseberry Island. In response to property owner's objections On March 18, 2008, Town Counsel emailed the Mashpee town manager stating:

> I have researched the statutes and case law on point, and ALL that the Town has the authority to do (pursuant to G.L. c.130, ss 52, 57, et seq.) is issue "grants" or licenses to individuals authorizing them to conduct shellfish farming or other authorized aquaculture activities at specified tideland/ low water areas. We have no legal or equitable title or interest in any of these areas, thus, we can't convey any title or interest to the Tribe. **We also have no legal right or ability to interfere with any rights or interests of private property owners or the Commonwealth in these areas,** thus, no action of the Town could affect any such private/ state rights. Finally, since the right to issue the grants/ licenses is vested in the Town by General Law, we have no right or legal ability to transfer or assign that right to any other entity. Special legislation by the General Court will be required to effect any such transfer of rights.

41.    At the April 8, 2008, Town Meeting, the Town passed Article 2, but Parcel Seven was removed from the list of parcels.

42.    On or about April 22, 2008, the Defendant Town of Mashpee signed an intergovernmental agreement ("IGA") with the Tribe.

43.    Notwithstanding the failure to include Parcel 7 in Article 2, the Town pledged in

7

the intergovernmental agreement to "support all necessary steps to have [Parcel 7] acquired in trust for the Tribe."

44.     During the permitting process in front of the Conservation Commission to develop Gooseberry Island On August 25, 2014, the Tribe sent a letter to the Mashpee Town Manager and Patrick Costello Town Counsel stating:

> Pursuant to Section 1.a of the IGA, the Town agreed to convey the Town's interest, if any, in the "Punkhorn Point Site" consisting of 4.6 acres surrounding Gooseberry Island, as depicted on Exhibit B and the accompanying map, and described as the "Mashpee Wampanoag Tribal Council Shellfish Aquaculture Areas." See Page 16 and 17 of the IGA. In the alternative, should the Town not hold fee title to the site, the Town agreed that it "shall support all necessary steps to have those Parcels acquired in trust for the Tribe including any local approvals or state legislation." Se Section 1.b of the IGA."....... "In accordance with the provisions of the IGA, the Tribe hereby respectfully requests that the Town—by and through the Town Manager, Town Attorney and Board of Selectman—aid and support the Tribe in its opposition to the proposed bridge and any other development on Gooseberry Island that would negatively impact the Tribe's shellfish grant. Further, the Tribe urges the Town to take the necessary steps to convey the "Mashpee Wampanoag Tribal Council Shellfish Aquaculture Areas" to the Tribe or, in the alternative, support the Tribe in its efforts to acquire the area as tribal lands.

45.     Interestingly plaintiff did a public records request to the town which required the town to provide plaintiff a copy of the August 25, 2014 letter from the tribe. In response the town falsely claimed no such record exist.

46.     In response to the tribes letter the town manager instructed town counsel to oppose the permits for the development of Gooseberry Island.

47.     On August 28, 2014, the Commission opened the continued hearing and Plaintiff requested additional continuance to October 9, 2014 to allow time for requested soil borings and structural analysis of proposed bridge.

48. At the meeting, the Mashpee Conservation Agent stated that Town Counsel will attend the October 9th meeting and then a motion was made and passed to continue the hearing to October 9, 2014.

49. The Commission never requested town council to attend there meeting.

50. On October 9, 2014 The Mashpee Conservation Commission opened the continued hearing and Patrick Costello Town Counsel was present and opposed Plaintiffs application.

51. Attorney Costello's opposition was extraordinary as he is tasked as legal counsel to the Commission and argued against an application for which the Commission is acting in a quasi-adjudicatory capacity.

52. During the October 9, 2014 Mashpee Conservation Commission hearing, Patrick Costello Town Counsel never mention he was there in response to the Tribe's request for the Town to oppose the bridge or on behalf of the Town to support the Tribe's opposition.

53. On April 18, 2018 the Mashpee Board of Selectmen sent a letter to Cedric Cromwell, chairman of the Mashpee Wampanoag Tribal Council, stating:

> With respect to the Town's commitments under the IGA, we already have fulfilled certain key obligations, including: . . . 4) supporting all local approvals and state legislation, as necessary and requested by the Tribe, to have the Punkhorn Point and the Popponesset Bay aquaculture sites acquired in trust, since the Town lacks fee title to those parcels.

54. The Popponesset Bay aquaculture site is Parcell 7 and surrounds Gooseberry Island.

55. The letter was drafted by Town Counsel.

56. At the December 12, 2018, the ZBA the hearing, George "Chuckie" Green director natural resources Tribe told the ZBA that granting the variance would violate the 2008 IGA.

57. At various times, the Plaintiff has sought to settle its dispute with the Town of Mashpee and its respective boards regarding development of Gooseberry Island.

58. The Defendant Town of Mashpee and its respective boards have consistently stated that it will not settle any claim of the Plaintiff without the approval of the Tribe.

59. By way of example, on February 7, 2020, Patrick Costello emailed Plaintiff's counsel:

> with respect to the pending Gooseberry Island zoning appeals and the various pending matters relative to construction of the bridge from Punkhorn Point to the Island, any proposed settlement must be acceptable to the Mashpee Wampanoag Tribe. As we discussed yesterday, there are certain Town/Tribe legal obligations and understandings pursuant to our Intergovernmental Agreement and otherwise that would absolutely preclude the Town from agreeing to any terms and conditions relative to construction of a bridge at this location without the consent of the Tribe. I understand that the zoning appeals do not involve the Tribe as a party, but since any stipulate resolution thereof would be predicated upon the construction of a bridge for access purposes we would want to assure the Tribe's assent to the proposed bridge in advance. You noted that, thus far, efforts to obtain Tribe approval of a bridge to the Island have been unsuccessful. While the other stated intentions of your client with respect to its development and use of the Island may well provide a basis for fruitful settlement discussions, it is essential that the Tribe be on board with the construction of a bridge as a preliminary matter. I would be happy to further discuss thi point with you, however, please note that this is a "nonnegotiable" prerequisite of the Town for any settlement negotiations regarding these appeals.

60. In a February 28, 2020 email from Patrick Costello to plaintiff's counsel, Mr. Costello stated "as previously noted, there are certain hard limits: the Tribe's concurrence with proposals for Gooseberry Is. development is essential."

61. On March 31, 2020 Patrick Costello, Town Counsel, called Plaintiff's Counsel regarding a proposed Agreement for Judgment provided by Plaintiff and Costello stated *inter alia* --

the Town is not going to agree to anything regarding the bridge unless the Tribe assents to it.

62.     In various communication in June and July, 2020, the Plaintiff explained to Town Counsel Patrick Costello that: (i) the Town and its respective boards had an independent duty under state law to make a decision on an application regardless of the IGA, (ii) the ZBA and the Conservation Commission were not parties to the IGA; and (iii) it was wholly inappropriate for the Town and ZBA to delegate its decision making powers to a third party.

63.     In early July, 2020, the Plaintiff specifically offer to settle the appeal of the zoning variance denials by entering into an Agreement for Judgment that a house could only be constructed on the island if and when a bridge was approved.

64.     On July 13, 2020, the Mashpee Board of Selectman went into Executive Session to for the purpose of: "Strategy Discussion Relative to Pending Litigation Regarding Gooseberry Island: Matthew Haney, Trustee of Gooseberry Island Trust and SN Trust vs. Zoning Board of Appeals and Town of Mashpee: Barnstable Superior Court CA 91972CV00012."

65.     On July 17, 2020, Patrick Costello Town Counsel emailed the following to Plaintiff:

Please be advised that I have discussed with the Board of Selectmen and Town Manager your proposed Agreement for Judgment in the above referenced zoning appeal, our recent conversations relative to a "universal" settlement of the multiple pending Gooseberry Island development litigation matters, as well as your recent statements of intent to pursue further litigation against the Town and Town officers in the event that these matters are not resolve forthwith. Upon review of your proposed Agreement for Judgment in the ZBA appeal and consideration of the status of the other pending Gooseberry Island litigation matters, including the

trial court and DEP appeal dispositions favorable to the Town rendered to date, be advised that the Town has rejected your settlement proposal.

## TITLE HISTORY OF THE PROPERTY

66. At all times material to this suit, Gooseberry, or members of the Nelson family in their individual capacity (Plaintiffs or Owners) owned real property consisting of an island in Popponesset Bay in Mashpee, Barnstable County, Massachusetts (the "Subject Property"), more particularly described in Land Court Plan 25209A. **(Exhibit 1)**.

67. Niles Sture Nelson ("Sture") purchased the Subject Property, a 4-acre island commonly known as "Gooseberry Island," from Fields Point Manufacturing Corporation pursuant to a quitclaim deed, dated September 22, 1955. **(Exhibit 2)**.

68. Sture purchased the Subject Property for an investment.

69. In 1981 Sture conveyed title to his son Robert J. Nelson and his wife, Betsy A. Nelson. **(Exhibit 3)**.

70. In 1992 Robert J. Nelson and Betsy A. Nelson conveyed title to the Subject Property to their son, Robert J. Nelson, Jr. **(Exhibit 4)**.

71. Upon Robert J. Nelson, Jr.'s retirement he planned to construct a single family home on the Subject Property.

72. In 2011 Robert J. Nelson, Jr. conveyed title to the Subject Property to the Robert D. Emmeluth as trustee of the Gooseberry Island Trust (**Exhibit 5**).

73. Matthew Haney succeeded Robert D. Emmeluth as trustee. **(Exhibit 6)**.

74. The property is currently vacant.

75. Remnants of the foundation of a cottage are shown on the Land Court Plan 25209-A (attached as Exhibit One), and are still present on the Property.

## ACCESS TO THE PROPERTY AND NEARBY ISLANDS

76. The Property is comprised of 4+ acres of land located in Popponesset Bay offshore from the end of Punkhorn Point Road formally known as the road to Gooseberry Island.

77. The Subject Property is separated from the mainland by a narrow channel that is approximately 40 feet wide at mean low water and 80 feet wide at mean high water.

78. The channel has a depth of less than two feet at mean low water. As further discussed below, the Plaintiff has rights in the property at the end of Punkhorn Point Road allowing the Plaintiff to travel along Punkhorn Point Road, a private road, across the property at the end, then to the water, and across the waters of Popponesset Bay to the Subject Property.

79. The Subject Property is currently accessed by wading across the channel.

80. Pursuant to Chapter 134 of the Acts of 1908, the Massachusetts General Court authorized Plaintiff's predecessor in title, Theodore H. Tyndale, his associates and assigns to construct a bridge from the mainland at the end of Punkhorn Point Road to the Subject Property ("1908 Act"). **(Exhibit 7)**.

81. Pursuant to the 1908 Act, the Board of Harbor and Land Commissioners Court issued a license to Theodore H. Tyndale to construct a bridge from the mainland at the end of Punkhorn Point Road to the Subject Property ("1909 License"). **(Exhibit 8)**.

82. The 1908 Act and the 1909 License also authorized the construction of a bridge from the mainland to Popponesset Island in Popponesset Bay.

83. This bridge to Popponesset Island was constructed pursuant to the Act and, at this time, over 70 homes have been constructed on the approximately 45 acres of land that constitutes Popponesset Island (*i.e.*, about one house for each 0.64 acres of total land).

84. Popponesset Island is located in the R3 District which requires a minimum lot size of 40,000 square feet (*i.e.*, 0.91 acres).

85. Popponesset Island has an elongated shape with a single road down the center which travels essentially north to south.

86. As such the overwhelming majority of home lots on the Popponesset Island have frontage on this narrow road on one side and Popponesset Bay on the opposite with adjacent home lots on each side to the north and south.

87. Notwithstanding that almost every lot is deficient in size and located on an island that can only be accessed via a small bridge connecting to a single road, the Defendant ZBA has approved numerous special permits and variances allowing the construction and expansion of single family houses on Popponesset Island.

88. Notwithstanding that the lots are deficient in size and located on an island that can only be accessed via a small bridge, the Town through its building department has issued numerous permits allowing the construction and expansion of single family houses on Popponesset Island.

89. Notwithstanding that almost every lot on Popponesset Island is located within or immediately adjacent to protected wetlands and the island has shellfish grants located in Popponesset Bay in its immediate vicinity, the Town of Mashpee through its Conservation Commission has issued numerous authorizations to allowing the construction and expansion of single family houses including associated septic systems on Popponesset Island.

## MASHPEE ZONING BYLAWS

90. On October 25, 1960, Mashpee Special Town Meeting adopted a zoning bylaw and placed the Property within the R-150 Residence.

91. After the adoption of the zoning by-law the Owner had a right to construct at least six houses on the Subject Property.

92. The March 7, 1966, Mashpee Annual Town meeting voted to amended the zoning by-law to require "minimum frontage of one hundred twenty-five (125) feet.... provided that one (1) one-family dwelling and its accessory buildings may be erected on any lot which at the time this by-law was adopted, is separately owned."

93. After the amendment of the zoning by-law, the Owner had a right to construct one house on the Subject Property.

94. The 1970 Mashpee Town meeting voted to amended the zoning by-law to require: "No building shall be erected except on a lot fronting on a street and there shall be not more than one principal building on any lot."

95. After the amendment of the zoning by-law and since the Subject Property is an island and has no frontage, the Owner needed a variance from the zoning bylaw to build a house on the Subject Property.

96. The May 1978 Mashpee Town meeting voted to add a grandfather provision to the zoning bylaw by adding Section 5.5 which provides: "Any lot shown on a plan and lawfully in existence in compliance with the provisions of the Subdivision Control Law (MGL Chapter 41), as of January 1, 1977 may thereafter be built upon."

97. After the enactment of this section, the Owner had a right to construct one house on the Subject Property.

98. The 1985 Mashpee Town meeting voted to amended the zoning by-law to remove the protection that Section 5.5 provided.

99. After the amendment of the zoning by-law, the Owner needed a variance to build a house on the Subject Property.

## ACTIONS OF THE DEFENDANT ZONING BOARD OF APPEALS
## TO PREVENT DEVELOPMENT OF GOOSEBERRY ISLAND

100. Gooseberry Island/Subject Property is located in a heavily developed waterfront residential area of the Town of Mashpee and nearly all available upland waterfront lots which are a fraction of the size of Gooseberry Island are developed with single family homes.

101. The Defendant ZBA is a board established by the Town which pursuant to M.G.L. ch. 40A, 10 and Section 174-95 of the Mashpee Zoning Bylaw has the authority to grant site specific variances to the terms of the Mashpee Zoning Bylaw.

102. Since adoption of the zoning bylaw in the town of Mashpee, the Defendants have granted hundreds of variances from the zoning by-law.

103. Plaintiff has been unable to find a situation whereas a municipally has refused to allow a house on an island with a similar amount of upland regardless of whether an access bridge has been constructed excepting circumstances where the Town or another entity purchased a restriction on the development of the island.

104. On or about August 29, 2013, the Plaintiff filed an application for variances with the ZBA of the following provisions of the Mashpee Zoning Bylaw to enable construction of a one single-family dwelling on the Subject Property: (i) Section 174-12- frontage on a

street; (ii) Section 174-31 – 150 feet of frontage on a street; and (iii) Section 174-32-unobstructed paved access roadway **(Exhibit 9)**.

105. On October 9, 2013, the Defendant ZBA held a public hearing on the Trust's application and voted 4 to 1 to deny it.

106. The Defendant ZBA filed three separate written decisions with the Town Clerk denying each of the three variances that the Plaintiffs request. **(Exhibit 10)**.

107. The Plaintiff timely appealed the 2013 ZBA decision to Barnstable Superior Court.

## ACTIONS OF THE MASHPEE CONSERVATION COMMISSION
## TO PREVENT DEVELOPMENT OF GOOSEBERRY ISLAND

108. On March 14, 2014 under the false belief that Defendant's only concerns were with public safety and the provision of emergency services, Plaintiff had Vaccaro Environmental Consulting file a Notice of Intent (NOI) application with the Mashpee Conservation Commission ("Commission"), a board established by the Defendant Town, on behalf of the Plaintiff and the SN Trust which are the owners of the land on Gooseberry Island/Subject Property and at the east end of Punkhorn Point Road in Mashpee proposing to construct a modern bridge and driveway in order to provide vehicle access to the island in approximately the same location as that approved in the 1908 Act and 1909 License.

109. After multiple continuances for various reasons, the matter was scheduled for a substantive hearing on January 8, 2015.

110. On January 8, 2015, the Commission closed the public hearing on the application.

111. On January 22, 2015, and based primarily on the Mashpee Conservation agent's recommendations, the Mashpee Conservation Commission voted to deny the Plaintiff's

application without prejudice and, on or about February 11, 2015, the Commission issued an Order of Conditions denying the proposed timber bridge under both the Wetlands Protection Act, M.G.L. c. 131, § 40 and the Mashpee Wetlands Protection Bylaw.

112.    The Commission's decision was not issued within twenty-one days of the close of the public hearing as required by the state Wetlands Protection Act, M.G.L. c. 131, § 40.

113.    On or about February 12, 2015, the Trusts filed a request for superseding review with the Massachusetts Department of Environmental Protection ("DEP") pursuant 310 CMR 10.05(7)(b).

114.    On or about June 30, 2015, the DEP issued a superseding order of conditions denying the proposed timber bridge on the grounds that the installation of sixteen 14-inch diameter piles within salt marsh would destroy 17.1 square feet of salt marsh and that the shading impacts from the bridge decking would have an adverse effect on the productivity of the salt marsh.

115.    On or about July 14, 2015, the Trusts requested that the DEP issue a variance from the Wetland Protection Act, and also appealed the DEP's denial superseding order of conditions by requesting an adjudicatory hearing with the Office of Appeals and Dispute Resolution ("OADR") pursuant to 310 CMR 10.05(7)(j)(2).

116.    Prior to the adjudicatory hearing, the Trusts conferred with the DEP about replacing the proposed timber bridge with a steel bridge which would span the salt marsh, remove the pilings from the disputed land containing shellfish and which would have better light penetration.

117.    The DEP advised that it would view such changes as permissible under the DEP's "Plan Change Policy" (Wetlands Program Policy 91-1: Plan Changes) and that such changes

would address the two reasons for denial because the steel bridge would have no piles in the salt marsh and would allow more light to penetrate to the salt marsh.

118. The Trusts revised their proposed plans accordingly and the DEP advised that it viewed the revised design as complying with the applicable Wetlands Regulations and entitled to approval under the Wetlands Protection Act.

119. On or about December 7, 2015, the OADR held a one-day evidentiary hearing on the matter.

120. On January 25, 2016, DEP filed a post-hearing memorandum of law stating: "iv. Conclusion: Based on the foregoing the Department now supports the Petitioners' request for a Final Order of Conditions and submits that the Presiding Officer should grant the Petitioners' appeal."

121. On January 25, 2016, the Commission filed a Post Hearing Memorandum of Law which provided: "VI. Conclusion: For the aforementioned reasons, the Department should find for the Respondents and issue a Ruling that the decision of the Commission was timely filed and therefore it is controlling and Petitioner's newly-filed Plan has improperly circumvented the Plan Change Policy requirement of through local review and should be remanded to the Commission."

122. On or about June 6, 2017, the OADR issued a Recommended Final Decision.

123. The Recommended Final Decision held, inter alia: (a) that the Commission's decision was not issued in a timely manner and, consequently, the Trusts were entitled to proceed with the adjudicatory appeal; and (b) Recommended Final decision affirming MassDEP's denial of the Petitioner's original proposed Timber Bridge Project and denying review of the Petitioner's alternative proposed Steel Bridge Project because the Steel Bridge was,

under MassDEP's Plan Change Policy, "substantially different" from the timber bridge first proposed and as a result required review by the Mashpee Conservation Commission in the first instance. Specifically, OADR determined that the Petitioner's expert witnesses, who testified that the new design was not substantially different from the prior design and would decrease impacts to wetlands, were not persuasive. By contrast, OADR determined that the MCC's and the intervenor parties' expert witnesses were more qualified than the Petitioner's experts and effectively demonstrated that the steel bridge alternative was substantially different and that its construction would increase impacts to salt marsh and shellfish resources **(Exhibit 11)**.

124. On or about June 22, 2017, the Commissioner of the DEP, Martin Suuberg, adopted the Recommended Final Decision and issued a Final Decision.

125. The decision that the Commission failed to act within 21 days of the closing of the public hearing effectively prohibited the Town from applying the Mashpee Wetlands Protection Bylaw to the Plaintiff's project unless Plaintiff was forced to file a new notice of intent before the Commission.

126. The Plaintiff who was aggrieved by the Final Decision, which would have required the Plaintiff to return to file a new notice of intent before the Commission, appealed by filing a Complaint with the Barnstable Superior Court seeking judicial review under the Administrative Procedure Act, G.L. c. 30A, § 14, on or about July 21, 2017.

127. The DEP responded to the Complaint in Superior Court by filing the Administrative Record in 2018.

128. On or about August 31, 2018 the Plaintiffs served a Motion for Judgment on the Pleadings.

129. The Defendant Town through the Commission responded with an Opposition and Cross-Motions for Judgment on the Pleadings.

130. On May 14, 2019, the Superior Court held a hearing on the Motions and took the matter under advisement.

131. On July 29, 2019, the Court issued a Memorandum and Order denying the Plaintiffs' Motion and allowing the Defendants' Cross-Motions and, on August 2, 2019, Judgment was entered affirming the DEP's Final Decision.

132. The Plaintiff was aggrieved by the Judgment of the Superior Court and filed a Notice of Appeal on August 28, 2019.

133. The appeals court affirmed the decision of the Superior Court.

**THE TOWN FILES A LAND COURT SUIT AGAINST THE PLAINTIFF CHALLENGING THEIR RIGHTS IN THE MAINLAND PARCEL WHICH ENABLES THEM TO BUILD A BRIDGE BUT THEN DOES NOT CLAIM THE PROPERTY TO TRY TO WEAR PLAINTIFF DOWN**

134. On October 3, 2014, the Town of Mashpee filed a Complaint in Land Court against the SN Trust challenging the SN Trust's title to the land at the end of Punkhorn Point Road (the "Land Court Action").

135. The Town's claim had little or no basis in fact.

136. On or about June 15, 2017, the Land Court directed the parties to identify the locations of the land that they sought to claim title to at the end of Punkhorn Point Road in a joint sketch.

137. In response, the parties submitted a document which became "Ex. C" to the Land Court as a stipulation.

138.    In Exhibit C, the Town placed the northern limit of its claims far to the south the end of Punkhorn Point Road and the claims of the other parties, with no overlap demonstrating that the Town knew that it had no viable claim of title to the land at the end of Punkhorn Point Road.

139.    On July 19, 2017, the SN Trust asked that the Town to settle the Land Court litigation against the SN Trust as the Town and the trust's claims did not overlap.

140.    Assistant Town Counsel Kathleen Connolly emailed: As we discussed, the Town of Mashpee is willing to enter into settlement discussions with SN Trust and the residents of Punkhorn Point Road who are plaintiffs in one of the consolidated cases. The Town is not interested in entering into a settlement with SN Trust alone, but rather would consider a global settlement of the issues in these two cases."

141.    On October 10, 2019, the Land Court entered judgment that the SN Trust owned the land at the end of Punkhorn Point Road and, in doing so, noted that the Town submitted no credible evidence or any testimony in support of its claim stating that the Town:

> did not offer any source deeds into evidence to show a foundation for [its] claim . . . . It did not
> offer a testimony from any witnesses on that topic or, for that matter, on any other [and] relied
> solely on (1) a 1954 deed from George and Gladys Schneider to the Town (with no underlying
> source deeds or other evidence to show a foundation tying that deed back [to the 1888 division of
> lands in Mashpee), and (2) a 1957 Plan . . . which the Town created based upon the Schneider
> deed but which, in fact, is inconsistent with it. I find neither reliable. (footnotes omitted)

142.    In reaching its decision, the Land Court explained that the Town utterly failed to present any evidence to support its claim stating as follows:

> The Town of Mashpee's position is more ambiguous. Because this is a case whose central issue is
> location — where on the ground, as best can be determined, the parties' respective parcels actually
> are — the court directed the parties to identify the locations they sought in a joint sketch. Ex. C

22

was the parties' response to that order, and was taken by the court as a stipulation. In that sketch, the Town put the northern limit of its claims far to the south of the other parties' claims, with no overlap. In its post-trial submission, however, the Town went beyond that limit to claim ownership of marshland further north, all the way to Punkhorn Point Road and in front of the road, which does create overlap in that area . . . due to the Town's failure to prove record title, traceable back to the original Mingo marsh setoffs, in any part of that area, I cannot find that the Town is the record owner of either of those set-offs, either . . . the Town did nothing more than make that statement. It offered no evidence at trial of any acts of possession, I saw none at the view, and the Town gave no citation or indication of what it meant by "generally accepted standards in the Commonwealth of Massachusetts..." or what it did to meet those alleged standards. Its claim of adverse possession thus fails.

## ZONING BOARD REJECTS THE WOOD AND STEEL BRIDGE PROPOSAL

143. On November 9, 2018, Plaintiff filed a three applications for a zoning variances to allow construction of a single family home on the Subject Property: (i) variance from requirement for frontage on a street, Mashpee Code Sec. 174-12, (ii) variance from frontage for fire department access, Mashpee Code Sec. 174-32, and (iii) variance from 150 foot length of frontage requirement, Mashpee Code Sec. 174-31 **(Exhibit 12)**.

144. The Plaintiff made the filings as he did not believe the ZBA was ever going to allow development of the island bridge or no bridge and the concern about public safety was a ruse for the Plaintiff to go on a wild Goose chase getting wetland permits for a bridge.

145. That is the issuance of variance is generally discretionary and no person is entitled to a variance.

146. Thus, it made little sense to expend efforts to obtain a wetland permit for a bridge if the ZBA would deny a variance for a single family home accessed via a bridge. The applicable provisions of the state zoning act as to variances provide [A zoning board of

23

appeals] shall have the power . . . to grant upon appeal or upon petition with respect to **particular land** or structures a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that owing to circumstances **relating to the soil conditions, shape, or topography of such land** or structures and **especially affecting such land or structures but not affecting generally the zoning district in which it is located**, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law. . . . G.L. ch. 40A, Sec. 10.

147.    Therefore, to address the 2013 variance denials, the application proposed to construct a single-lane bridge that will span the channel and provide pedestrian and vehicle access to the Island, including access by the Town's emergency response vehicles and explained how the island met the criteria for granting a variance as because of "circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law."

148.    The application specifically stated: "The plans depict a timber pile-supported bridge and a steel bridge supported by piles. The final design of the bridge is subject to pending

24

litigation, but it will be either the timber bridge or the steel bridge." Petition for Variance, dated November 9, 2018, at p. 3, n. 1.

149. Prior to opening the public hearing on December 12, 2018, the ZBA in violation of Open Meeting Law, G.L. c. 30A, §§ 18-25 entered executive session with assistant Town Attorney, Kate Connolly, to discuss the application.

150. The ZBA never requested town council to attend there meeting.

151. The ZBA then opened the public hearing on the Plaintiff's application and then had assistant Town Attorney Kate Connolly speak in opposition to Plaintiffs variance request.

152. At the hearing, the Plaintiff asserted that, if the ZBA does not approve the variance, their action will constitute a regulatory taking.

153. In response, the Chairman of the ZBA requested the opinion of Assistant Town Attorney, Kate Connolly, as to whether the denial of a variance would constitute a regulatory taking and she advised the ZBA that such action would not constitute a regulatory taking.

154. At the close of the hearing, the Defendant ZBA voted 5 to 0 to deny the application for a variance.

155. On December 20, 2018, the ZBA filed three separate written decisions with the Town Clerk denying the Plaintiffs petition on the basis that basis that the proposed variance would not advance the Town's interest in maintaining the public safety and, further, grant of a variance would in fact derogate from the underline purpose and intent of the Zoning By-laws. **(Exhibit 13)**.

156. The Plaintiff timely appealed the 2018 ZBA decisions to Barnstable Superior Court.

157. The denial was not based upon Massachusetts' common law nuisance principles or any other longstanding common law background principle of state law.

158. Without the issuance of the variances, the Plaintiff cannot develop the Subject Property for a home or any other economically viable, developmental use.

## CHANGE IN FEDERAL LAW

159. In 2019, the United States Supreme Court issued its decision in Knick v. Township of Scott, 139 S.Ct. 2162 (2019).

160. In Knick, the Supreme Court overruled Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), which held that property owners must seek just compensation under state law in state court before bringing a federal takings claim.

161. The holding in Knick makes it possible for a property owner alleging a regulatory taking claim to proceed directly to federal court.

## 2021 FEDERAL REGULATORY TAKING CLAIM

162. On April 29, 2021 due to the actions of the Defendant the plaintiff filed a regulatory taking claim in federal district court

163. On March 22, 2022 the court issued a decision dismissing the complaint without prejudice stating "No "Final" Decision Has Been Made By The Town" and the claim was not "ripe" yet because "the Trust has not filed any application seeking a variance based on the steel bridge proposal. Therefore, the present litigation is not ripe. Haney has not given the agencies the opportunity "to exercise their full discretion in considering development plans for the property[.]" Palazzolo, 533 U.S. at 620-21, 121 S. Ct. at 2459." **(Exhibit 14).**

164. In the order the district court explained "The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. am. V. A property owner may bring a Fifth Amendment claim under 42 U.S.C. § 1983 to seek compensation for a government violation of the Takings Clause. Knick v. Twp. of Scott, Penn., 139 S. Ct. 2162, 2177, 2014 L. Ed. 2d 558 (2019). When governmental regulations deprive a property owner of all economically beneficial uses of their property, that owner has suffered a compensable taking. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 2895, 120 L. Ed. 2d 798 (1992). "Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457, 150 L. Ed. 2d 592 (2001) (citing Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123, 98 S. Ct. 2646, 2659, 57 L. Ed. 2d 631 (1978))."

165. Knowing the ZBA already rejected the steel bridge proposal the Plaintiff appealed the decision to the first circuit.

166. During the appeal the ZBA took the position the 2018 Variance denials were not final decisions.

167. The first circuit affirmed the district court judgement on different grounds explaining "Moreover, as discussed above, the Board made it clear when considering the 2018 Variance Applications that it was concerned with the lack of emergency vehicular access

to Gooseberry Island and felt "uncomfortable with conditioning" the variances on a bridge that the Trust had not yet obtained approval for. The Board has never represented that it would deny any and all variance applications -- even if the Trust presented applications accompanied by an approved steel-bridge plan. Given this, we cannot conclude that the Board has committed to a position" with respect to the variances. See Pakdel, 141 S. Ct. at 2230. The Trust still has the option to pursue approval of the steel-bridge proposal and then present the Board with variance applications. See id. (holding the finality requirement met where there was no question about the government's position and such position inflicted a concrete injury on the plaintiff). Submission of those applications would further clarify "the extent of development permitted by the" Town's zoning bylaws. Palazzolo, 533 U.S. at 624. Accordingly, Haney has not demonstrated compliance with the finality requirement. **Conclusion** Haney must first obtain the government's conclusive and definitive position on the application of the Town's zoning bylaws to Gooseberry Island before proceeding in federal court. See Pakdel, 141 S. Ct. at 2230. Having failed to do so, and for all the reasons stated above, the judgment of the district court is affirmed." **(Exhibit 15)**.

## POST 1ST CIRCUIT DECISION ACTIONS OF THE DEFENDANTS THAT "RIPEN" THE REGULATORY TAKING CLAIM

168.    In response to the 1st circuit court decision instructing the Plaintiff needed to obtain the "government's conclusive and definitive position on the application of the Town's zoning bylaws to Gooseberry Island" before proceeding in federal court Plaintiff released the stay in the zoning appeal cases which were consolidated.

169. On October 9, 2024 Defendants submitted to the plaintiff defendants proposed statement

of facts **(Exhibit 16)**.

170. In their proposed statement of facts Defendant took the position in regards to the 2013

applications for variances (no bridge proposal)

> In its Decisions, the ZBA noted in support of its denial of the variances the
> lack of adequate access to the Island for responses to medical emergencies,
> general public safety concerns, potential negative environmental impacts,
> particularly with respect to the Mashpee Wampanoag Tribe's aquaculture
> grants around the Island, and its determination that a grant of the variances
> would derogate from the underlying purpose and intent of the Zoning
> Bylaws.

171. In their proposed statement of facts Defendant took the position in regards to the 2018

applications for variances (access via wood or steel bridge)

> In said Decisions, the ZBA noted in support of its denial of the variances
> the lack of adequate access to the Island for responses to medical
> emergencies, general public safety concerns, fire safety, potential negative
> environmental impacts with respect to the Mashpee Wampanoag Tribe's
> aquaculture grants around the Island, and its determination that a grant of
> the variances would derogate from the underlying purpose and intent of
> the Zoning Bylaws.

172. On October 11, 2024 a jury waived trial in front of Hon. Thomas J Perrino was held and

the matter was taken under advisement.

173. On March 13, 2024 the Hon. Thomas J Perrino issued a memorandum & Order

"Judgment is to enter in favor of the Defendants, Mashpee Zoning Board of Appeals, et

al., ORDERING that its decision denying the applications for variances is AFFIRMED."

finding the following

> The 2018 application sought the same three variances, however, the
> proposal included access to the island and the proposed residence by way
> of a bridge to be constructed. The Board recognized the issues surrounding
> whether the bridge actually could be built. Also, the Board recognized that
> there existed a dispute over ownership of the land on the mainland side of
> where the bridge was to be located as well as conservation issues
> regarding spanning the tidal area. Again, **the fire chief was not in favor**

**of bridge access**, it being only ten feet wide, and difficult to timely respond to emergencies. Also, the Wampanoag Tribe spoke against the proposed bridge, citing their existing shellfish rights in the waters where the bridge was proposed. **After due deliberation, the Board again unanimously voted to deny the application, reasoning that the proposal would be a detriment to the public good and would derogate from the intent of the by-law. (Exhibit 17)**

174. On March 15, 2024 the Barnstable Superior court issued two judgments that the decision of the Defendants, Mashpee Zoning Board of Appels is affirmed. **(Exhibit 18)**.

175. During the trial the Defendants did not take the position the lack of wetland permits for the steel bridge as the sole basis for their denials.

176. During the trial the Defendants did not take the position the ZBA had <u>not</u> reached a final decision in regard to the zoning petitions.

177. The Superior court did not find in their decision the lack of wetland permits for the steel bridge was the sole basis for the Defendants denials.

## DECLARATORY RELIEF ALLEGATIONS

178. The Plaintiffs have the right to be free from a taking of their private property occurring without just compensation under the Fifth Amendment to the United States Constitution, and Article 10 of the Massachusetts Declaration of Rights.

179. The Town of Mashpee and the ZBA are charged with enforcing local rules that have been employed to harm and take the Plaintiffs' private property without compensation.

180. The Town of Mashpee and the ZBA have a legal obligation under state and federal law to provide compensation once private property is taken.

181. There is a justiciable controversy in this case as to whether the ZBA denial of variances that would have allowed the Plaintiffs to build a home requires just compensation under Article 10 of the Massachusetts Declaration of Rights and/or the Fifth Amendment to the United States Constitution.

182. A declaratory judgment as to whether the ZBA's denial of a variance unconstitutionally takes property will clarify the legal rights and obligations between Plaintiffs and Defendants, with respect to enforcement of the Mashpee Zoning Bylaw and the requirement of just compensation.

183. A declaratory judgment as to the constitutionality and legality of the ZBA's denial of a variance will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

**COUNT I**

**<u>Unconstitutional Taking of Private Property Under the Fifth Amendment</u>**

**<u>to the United States Constitution</u>**

184. Plaintiffs repeat the allegations in paragraphs 1 through 183 set forth above and further allege as follows.

185. The Fifth Amendment to the United States Constitution prohibits the government from taking private property without just compensation.

186. The Fourteenth Amendment to the United States Constitution makes the Fifth Amendment to the United States Constitution applicable to the states and municipalities.

187. The Fifth Amendment's requirement of just compensation is self-executing and, through the Fourteenth Amendment, provides property owners with a self-executing right to damages for a taking carried out by a state or municipality.

188. A regulatory taking occurs when the state or governmental agency denies a property owner of all economically beneficial use of land, Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), or deprives an owner of significant economic value. Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978).

189. The actions of the Defendants alleged in this Complaint have deprived the Plaintiffs of all economically beneficial use of their land and constitutes a categorical taking under Lucas v. South Carolina Coastal Council.

190. The actions of the Defendants alleged in this Complaint have deprived the Plaintiffs of significant economic value of the subject Property and constitutes a taking under Penn Central.

191. The actions of the Defendants resulted in the Plaintiffs being unable do anything with the subject Property except to view it.

192. Alternatively, if any residual value remains, actions of the Defendants alleged in this Complaint have deprived the Property of approximately 98.9% of its prior value as a residential developable waterfront lot.

193. In light of the surrounding neighborhood, which includes many developed oceanfront lots that are substantially similar to the Property, Plaintiffs had distinct and reasonable expectations that they could build a single-family home on the subject Property.

194. The reasonable use expectation for the subject Property is as a residential developed oceanfront parcel.

195. The actions of the Defendants have the constructive effect of ousting the Plaintiffs from the Property and converting it to conservation land.

196. The Defendants did not provide, offer, or guarantee compensation to the Plaintiffs at any time, and nothing in the town bylaws provides for compensation of persons in the Plaintiffs' position.

197. The actions of the Defendants alleged in this Complaint are an uncompensated taking of the Plaintiffs' Property for public benefit.

198. The Plaintiffs have exhausted all applicable and relevant administrative procedures.

199. This Complaint seeks damages, in the form of monetary compensation, for the regulatory taking of the subject Property.

200. Defendants' actions were taken under color of law and constitute the policy of the Town of Mashpee, as embodied on the Mashpee Zoning Bylaw, which was adopted by vote of the residents of Mashpee at Town Meetings.

### COUNT II

#### Inverse Condemnation Under the Massachusetts Constitution and State Law

201. Plaintiff repeats the allegations in paragraphs 1 through 200 set forth above and further allege as follows.

202. Article 10 of the Massachusetts Constitution provides as follows: no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, ... And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.

203. The Massachusetts Supreme Judicial Court has held that a regulatory taking claim may be brought against a municipality and its boards and commissions under Article 10 of the Massachusetts Constitution enabling a Plaintiff to state a cause of action to recover damages when the state or a political subdivision takes private property through regulation and in the absence of eminent domain proceedings.

204. Under Article 10 of the Massachusetts Constitution, a property owner may establish that a compensable taking has occurred, resulting in a valid state law inverse condemnation

claim, by showing that the government has substantially impaired its right to possess, use, enjoy, or dispose of land.

205. Property rights may be deemed to be substantially impaired when a government action substantially reduces the value of the subject property or substantially intrudes on other property rights.

206. The actions of the Defendants alleged in this Complaint have substantially impaired the use, enjoyment, and value of the Property.

207. The actions of the Defendants alleged in this Complaint resulted in an uncompensated taking of the Property for public benefit.

208. The Defendants have not instituted formal condemnation or eminent domain proceedings against the Property.

209. The actions of the Defendants are not based upon common law principles such as the common law of nuisance.

210. The Plaintiffs are entitled to recover compensation from the Defendants under Article 10 of the Massachusetts Constitution.

211. The Plaintiffs have exhausted all applicable and relevant administrative procedures.

212. The federal court should assert supplemental jurisdiction over this claim because it has "original jurisdiction" under Count I, and this claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" under Article III of the United States Constitution. See 28 U.S.C. 1367.

WHEREFORE, the Plaintiffs requests that this Honorable Court:

A. Declare that the Defendants' actions have resulted in an unconstitutional taking of the Plaintiffs' Property under both the United States Constitution and the Massachusetts Constitution;

B.    Assess damages for just compensation for a taking of the Property under the Fifth Amendment in the amount of $9,025,000.00;

C.    Assess damages for a taking of the subject Property under Massachusetts law in the amount of $9,025,000.00;

D.    Award the Plaintiffs their attorney's fees and costs in this matter as allowed under state and federal law and specifically under 42 U.S.C. § 1988; and

E.    Enter such other orders as it deems meet and just.

Dated: October 4, 2024

Respectfully submitted,
Matthew Haney, Trustee Gooseberry Island Trust
By Matthew Haney, Pro se

_____
Matthew Haney
PO Box 1416
Brookline, MA 02446
(617) 266-9250
matthtmc@yahoo.com