UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW HANEY, AS TRUSTEE OF THE GOOSEBERRY ISLAND TRUST,<br><br>  Plaintiff,<br><br>  v.<br><br>TOWN OF MASHPEE, RON BONVIE, SHARON SANGELEER, WILLIAM BLAISDELL, JONATHAN FURBUSH, SCOTT GOLDSTEIN, AS THEY ARE MEMBERS AND ARE COLLECTIVELY THE ZONING BOARD OF APPEALS OF THE TOWN OF MASPHEE,<br><br>  Defendants. | Civil No.<br>**1:24-cv-12562-BEM**<br><br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF 12)**<br><br><br>**ORAL ARGUMENT REQUESTED L.R. 7.1(d)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................4

   A.   Regulatory (*de facto*) Takings: Factual Inquiries ...........................................4

   B.   Private Property ...............................................................................................5

      1.   Fee simple ownership is enough .................................................................5

      2.   The property interests taken are the uses inherent in private property ownership......7

      3.   Haney doesn't need to allege he has a "vested" permit .............................9

   C.   Taken: The Complaint Alleges that the Town's Restrictions on Haney's Property
        and Its Use "Go Too Far" ...............................................................................11

      1.   Town waived challenge to *Lucas* allegations .........................................12

      2.   The complaint alleges a *Penn Central* theory.........................................12

         a.   Economic impact allegations..................................................................14

         b.   Investment-backed expectations allegations ...................................15

         c.   Character allegations ...........................................................................17

   D.   Without Just Compensation .........................................................................20

   III.   CONCLUSION ...............................................................................................20

REQUEST FOR ORAL ARGUMENT .........................................................................21

CERTIFICATE OF SERVICE .......................................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*Ark. Game & Fish Comm'n v. United States*,
    568 U.S. 23 (2012)........................................................................................................2

*Armstrong v. United States*,
    364 U.S. 40 (1960)...............................................................................................1, 4, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3, 19

*Att'y Gen. ex rel. Maddox v. Elsevier, Inc.*,
    732 F.3d 77 (1st Cir. 2013)..........................................................................................1

*Baltimore & P. R. Co. v. Fifth Baptist Church*,
    108 U.S. 317 (1883).....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................15

*Berezin v. FCA US, LLC*,
    No. CV 21-10852-FDS, 2023 WL 8283870 (D. Mass. Nov. 30, 2023)....................12

*Brett v. Bldg. Comm'r of Brookline*,
    145 N.E. 269 (Mass. 1924)........................................................................................10

*Brox v. Woods Hole*,
    706 F. Supp. 3d 151 (D. Mass. 2023)........................................................................12

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021)...............................................................................................5, 18

*Daddario v. Cape Cod Comm'n*,
    681 N.E.2d 833 (Mass. 1997).....................................................................................13

*FBT Everett Realty, LLC v. Mass. Gaming Comm'n*,
    187 N.E.3d 373 (Mass. 2022).....................................................................................13

*Gagliardi v. Sullivan*,
    513 F.3d 301 (1st Cir. 2008)........................................................................................1

*Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee*,
    70 F.4th 12 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 564 (2024)...............................9

*Hodel v. Irving*,
    481 U.S. 704 (1987)...................................................................................................14

*Kaiser Aetna v. United States*,
    444 U.S. 164 (1979).....................................................................................................8

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005)...................................................................................................13

*Lost Tree Vill. Corp. v. United States*,
   787 F.3d 1111 (Fed. Cir. 2015)..........................................................................19

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992) ......................................................... 2, 4, 6, 8-9, 12, 19

*Lycoming Fire Ins. Co. of Muncy v. Haven*,
   95 U.S. 242 (1877) ...........................................................................................6

*Murr v. Wisconsin*,
   582 U.S. 383 (2017)......................................................................................2, 4

*Noonan v. Wonderland Greyhound Park Realty, LLC*,
   723 F. Supp. 2d 298 (D. Mass. 2010) ...........................................................3, 12

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001)...........................................................2-3, 13, 15-17, 19

*Penn Central Transp. Co. v. New York City*,
   438 U.S. 104 (1978)...................................................................................2, 4, 13

*Pennsylvania Coal Co. v. Mahon*,
   260 U.S. 393 (1922).............................................................................1, 4, 11, 13

*Phillips v. Washington Legal Found.*,
   524 U.S. 156 (1998) ........................................................................................9

*Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972) ......................................................................................10

*Rodriguez-Reyes v. Molina-Rodriguez*,
   711 F.3d 49 (1st Cir. 2013) ..........................................................................3, 15

*Roslindale Motor Sales, Inc. v. Police Comm'r of Bos.*,
   538 N.E.2d 312 (Mass. 1989) .......................................................................10

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984).......................................................................................13

*San Diego Gas & Elec. Co. v. City of San Diego*,
   450 U.S. 621 (1981).........................................................................................8

*Shands v. City of Marathon*,
   No. 3D21-1987, 2025 WL 396272 (Fla. Dist. Ct. App. Feb. 5, 2025) ...................19

*Soni v. Bos. Med. Ctr. Corp.*,
   683 F. Supp. 2d 74 (D. Mass. 2009) ...............................................................12

*Suitum v. Tahoe Reg'l Plan. Agency*,
   520 U.S. 725 (1997).........................................................................................9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   535 U.S. 302 (2002)....................................................................................4, 13

*Tai Tam, LLC v. Missoula Cnty.*,
  520 P.3d 312 (Mont. 2022) ................................................................ 6-8

*Tyler v. Hennepin Cnty.*,
  598 U.S. 631 (2023) ..................................................................... 5-6, 8

*Wills v. Brown Univ.*,
  184 F.3d 20 (1st Cir. 1999) .................................................................12

*WNAC, LLC v. Verizon Corp. Servs. Grp., Inc.*,
  No. 21-CV-10750-ADB, 2024 WL 778794 (D. Mass. Feb. 26, 2024) ...................12

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ...................................................................... 2, 11

## Constitutions

U.S. Const. amend. V ................................................................................ 1

Mass. Const. art. X ...............................................................................13

## Rules

Fed. R. Civ. P. 8(a)(1) ...........................................................................12

Fed. R. Civ. P. 9(b) ..............................................................................15

Fed. R. Civ. P. 56(e)(3) ..........................................................................14

## Other Authorities

Berger, Michael M., *A Taking is a Taking . . . and Juries Know One When They
  See It*, 39 J. Land Use & Envtl. L. 191 (2024) ...................................... 2, 17

Town of Mashpee, bylaw § 63-1 ...............................................................18

## I.     INTRODUCTION

Haney's *pro se* Complaint (Oct. 4, 2024) (ECF 1) easily meets the modest standard for stating a *de facto* (aka "regulatory") takings claim.[1] It alleges facts to support each of the three essential elements of the cause of action established by the Fifth Amendment: (1) Haney owns "private property;" (2) the Town has taken actions that have public benefit (preserve Gooseberry Island in its natural state) but "go too far" by limiting the uses of Haney's land such that "in all justice and fairness" he should not shoulder the entire cost of the *de facto* conservation easement, and the restrictions are thus the equivalent of a taking by eminent domain); and (3) the Town has not provided "just compensation.[2] *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory") (citation omitted).[3]

The face of the complaint checks all the necessary boxes to assert that the Town's actions require compensation for a *de facto* taking under either (or both) of the two long-recognized legal

---

[1] In this Memorandum, Plaintiff will be referred to as "Haney," and Defendants will be referred to collectively as "Town."

[2] *See* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least, is that, while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking."); *Armstrong v. United States*, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

[3] Plaintiff has no objection to the "Facts as Pled in the Complaint" section on pages 3-5 in Defendant's Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF 12) ("MTD"), except it is incomplete. The Complaint (ECF 1) ("Compl.") is the operative document, and all of its factual allegations are deemed true for purposes of a 12(b)(6) motion to dismiss. *Att'y Gen.* ex rel. *Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). The complaint also pleads facts not relevant to this motion, detailing the procedural history of the dispute, which demonstrates the Town has reached a final decision and the *de facto* takings claim is ripe. *See* Compl. ¶¶ 80, 82, 83, 104, 147-49, 155, 156, 162, 168, 169-77.

theories.[4] *See* Compl. ¶¶ 188, 189 ("A regulatory taking occurs when the state or governmental agency denies a property owner of all economically beneficial use of land or deprives an owner of significant economic value.") (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)). The complaint alleges Haney owns land in fee simple and the Town's regulations and other actions have left the property vacant and economically idle. It also alleges the Town has radically interfered with Haney's expectations, and that the Town has long wanted to shield this land from development.

For nearly fifty years, the Supreme Court has repeatedly held that resolving these claims require "*ad hoc* factual" inquires in which the trier of fact is tasked with evaluating proof of several circumstance-dependent factors. *Penn Central*, 438 U.S. at 124-25 (describing the regulatory takings test as a set of "essentially *ad hoc*, factual inquiries"); Michael M. Berger, *A Taking is a Taking . . . and Juries Know One When They See It*, 39 J. Land Use & Envtl. L. 191, 208 n.100 (2024) (The author, a leading national takings courtroom practitioner writes, "most cases need to be decided individually on their own facts."). There is "no magic formula" to determine in every case whether there is a taking. *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012). The doctrine is "flexible" to account for the factual circumstances. *Murr v. Wisconsin*, 582 U.S. 383, 394 (2017). One Justice has referred to the fact-driven nature of takings claims as the Court's "polestar," and noted the standards are merely "guideposts," not "mathematically precise variables." *Palazzolo v. Rhode Island*, 533 U.S. 606, 633-34, 636 (2001) (O'Connor, J., concurring) ("[O]ur

---

[4] Note that Haney's complaint alleges a single *de facto* takings claim, asserting two theories. *Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992) ("Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims*. They are, rather, separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking.").

polestar ... remains the principles set forth in *Penn Central* itself," which require a "careful examination and weighing of all the relevant circumstances.").

The Town has waived any argument that the complaint falls short of alleging a *Lucas* theory, and its motion to dismiss should be denied for that reason alone. *See Noonan v. Wonderland Greyhound Park Realty, LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (an argument not raised in support of a motion to dismiss is deemed waived). Similarly, the Town's assertion the complaint does not adequately allege a *Penn Central* claim should be denied, because the Town's argument is based only on its contrary view of the facts. For example, the Town disputes that its actions have severely restricted Haney's uses and the value of the land and asserts that Haney must have a different set of expectations. Perhaps that is so. But resolving fact disputes is not the function of a 12(b)(6) motion to dismiss for failure to state a claim. But the Court's review here is limited to whether it is plausible—when viewing the allegations as a whole—that the Town could be liable for a *de facto* taking. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

No magic words need be invoked. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (complaint need not "make[] any particular factual allegations" to satisfy this standard, and its plausibility must be assessed based on the complaint as a whole). Complaints that may seem hard to prove survive. Even complaints that seem hard to believe survive. Motions to dismiss for failure to state a claim in *de facto* takings cases—as in every civil lawsuit in the initial pleadings stage—are not meant to screen out claims where liability might seem remote. *Iqbal*, 556 U.S. at 681 (court may not dismiss "because it thought that claim too chimerical to be maintained"). These cases are resolved by the trier of fact, and if the Town believes that there is only one view of the facts, it remains free to seek summary judgment at the proper time. The Town's motion to dismiss should be denied.

## II.    ARGUMENT

### A.    Regulatory (*de facto*) Takings: Factual Inquiries

The core purpose of a *de facto*/regulatory takings claim is to determine when "justice and fairness" requires the cost of a public benefit to be spread to the public:

> The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

*Armstrong*, 364 U.S. at 49. The Supreme Court first expressly recognized the cause of action over a century ago. *Pennsylvania Coal*, 260 U.S. at 415. In the intervening decades, time and time again the Court has emphasized that resolution of these claims requires a factual inquiry. As the Court put it, there is no "set formula"—

> [T]his Court, quite simply, has been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.

*Penn Central*, 438 U.S. at 124. As the Court also puts it, "[t]his area of the law has been characterized by 'ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'" *Murr*, 582 U.S. at 393 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)); *see also Lucas*, 505 U.S. at 1015 ("In 70-odd years of succeeding 'regulatory takings' jurisprudence, we have generally eschewed any 'set formula' for determining how far is too far, preferring to 'engag[e] in ... essentially ad hoc, factual inquiries.'" (quoting *Penn Central*, 438 U.S. at 124)). Thus, resolution of these claims does not turn on rigid rules of law, and this is not an area generally subject to categorical, court-imposed outcomes.

There's a reason for the fact-and-evidence-centric nature of the regulatory takings inquiry. One of the key differences between *de facto* takings claims and eminent domain takings claims (other than the parties are reversed) is that in an eminent domain complaint, the government admits it is taking property and acknowledges its resulting obligation to provide just compensation. In *de facto* takings claims by contrast, the government denies it is exercising eminent domain or has taken anything, and asserts it is merely regulating property under the police power. Thus, the main task for a plaintiff in a *de facto* takings case is to prove that despite the government's denials, the facts show its actions have the same effects and impacts on the plaintiff and the property as would an exercise of eminent domain. *See*, *e.g.*, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021) (Even though the State had not actually used eminent domain to "exact a true easement," the Court held that the State interfered with the owner's rights in the same way as would a taking of an easement by eminent domain.).

The pleading stage is too early to conclude as a matter of law that the Town *hasn't* "gone too far." The launch phase of litigation is not the place to categorically rule that a factfinder weighing factors such as the economic impact of the Town's restrictions, the character of its actions over the years—including repeated statements of its acquisitory and no-development intent—and Haney's "distinct investment-backed expectations" could not find that the Town has "gone too far" and "fairness and justice" require treating this like eminent domain. With this context in mind, we turn to the complaint's allegations which support each element of a *de facto* takings claim.

**B.    Private Property**

**1.    Fee simple ownership is enough**

Recently, the Supreme Court clarified that to define Fifth Amendment "private property," courts "look to 'traditional property law principles,' plus historical practice and this Court's

precedents." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023). Haney's complaint alleges he owns "private property." *See* Compl. ¶¶ 66, 72, 73. The term "own" generally means fee simple absolute.[5] *See also* Compl. ¶ 80 (alleging "Plaintiff's predecessor in title …" meaning that Haney states he is the current "title" holder as well as "owner"). Fee simple ownership is the most historically longstanding, traditional, and protectable species of private property—one which our system of law has recognized since the time of William the Conqueror.

Thus, the complaint plausibly alleges Haney possesses all the metaphorical "sticks" in the bundle that come with ownership of land. These rights include the right to make economically beneficial and productive use, to develop, to exclude others, and to alienate, to name a few. Fee simple ownership thus encompasses the private property right the complaint alleges Haney owns and was taken: the right to make economically beneficial and productive use. *See Lucas*, 505 U.S. at 1027 ("Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with."). That allegation alone means it is plausible he possesses "private property," and the first element of a regulatory takings claim is properly alleged.

The analysis of the Supreme Court of Montana in a recent case explains it best. *See Tai Tam, LLC v. Missoula Cnty.*, 520 P.3d 312 (Mont. 2022). There, the trial court granted the county's 12(b)(6) motion and dismissed plaintiff's complaint which asserted the county's denial of a subdivision permit resulted in a regulatory taking. *Id*. at 320. Considering the same argument the

---

[5] *See Lycoming Fire Ins. Co. of Muncy v. Haven*, 95 U.S. 242, 245 (1877) ("[I]t follows that the plaintiffs were, within the meaning of the policy, the entire, unconditional, and sole owners of the land where the buildings stood, for their own use and benefit, at the time of the fire; and, if so, the *prima facie* presumption must be that they held the title of the buildings by the same fee-simple title").

Town makes here, the trial court held the plaintiff had not adequately pleaded it owned private property, because "it did not have a protected property interest in the approval of a subdivision application, and therefore its Complaint failed to state a cause of action for due process and takings claims." *Id.* at 321. The Supreme Court rejected that crabbed view of "private property," holding that the allegation the plaintiff held "ownership of McCauley Meadows [the land] is sufficient to state a protected property interest[.]" *Id.* The court held it error to view the property narrowly as only the right to subdivide:

> Rather than apply this interest [the fee simple ownership] to Tai Tam's § 1983 claims, the District Court took Tai Tam's concession it did not have a protected property interest in the subdivision application and ended its inquiry there. This was in error, as the District Court was required to address whether Tai Tam's rights inherent in its ownership of McCauley Meadows were violated by the Board's actions, and inactions, in this case.

*Id.* The court held that ownership was enough to state a takings claim:

> While the District Court was correct that Tai Tam lacked a protected property interest in a subdivision application, as Tai Tam specifically conceded in its Complaint, the court failed to address whether Tai Tam's status as a landowner was sufficient to allow it to bring § 1983 claims in this case. Under the pertinent standard of review following a Rule 12(b)(6) motion to dismiss, we find Tai Tam's ownership of McCauley Meadows is sufficient to state a protected property interest and bring § 1983 claims against the Board in this case.

*Id.* The Town, however, takes a radically different view of Fifth Amendment private property, predicated on two discredited theories.

### 2.    The property interests taken are the uses inherent in private property ownership

First, to state a takings claim Haney is not required, as the Town asserts, to allege that he has a right to develop a particular use. It claims that the "private property" here is limited to Haney's particular "desired use of the property." MTD at 2. It then asserts as a matter of law that Haney cannot have a property interest in that use of his property because the Town's regulations

require the issuance of variances for such use. *Id*. The Town's argument is entirely circular: Haney cannot establish a property right in the use of his private property because the Town has regulated away that use. This is contrary to the U.S. Supreme Court's view of private property, which is not shaped exclusively by government regulations, but by history, tradition, and the rights that commonly adhere to the ownership of land and property. *See Tyler*, 598 U.S. at 638. The fact that Haney may need to obtain a variance does not undermine his private property interests inherent in the ownership of the land itself, including its use and enjoyment. *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 651-52 (1981) ("[T]he Court frequently has found 'takings' outside the context of formal condemnation proceedings or transfer of fee simple, in cases where government action benefiting the public resulted in destruction of the use and enjoyment of private property." (Brennan, J., dissenting) (collecting earlier decisions holding same)); *see also Tai Tam*, 520 P.3d at 321 ("[O]wnership of [land] is sufficient to state a protected property interest" because there are "rights inherent in [] ownership ...."). And the land and its uses are what Haney is claiming has been taken. Compl. ¶¶ 66, 72, 73. *Cf. Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 332 (1883) (The Fifth Amendment prohibits government actions that interfere with private property "to an extent which would amount to an entire deprivation of its use and enjoyment, without compensation to the owner.").

The Town's view cannot be reconciled with longstanding *de facto* takings jurisprudence. In regulatory takings, the landowner alleges that regulation has removed some or all of the traditional sticks inherent in the bundle of private property rights. *See*, *e.g.*, *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979) (finding a taking where the owner loses "one of the most essential sticks in the bundle of rights that are commonly characterized as property"); *Lucas*, 505 U.S. at 1027 (Regulation away of "all economically beneficial use" is a compensable taking.). In such

cases, the government may avoid takings liability only upon a showing that the rights regulated away "were not part of his title to begin with." *Lucas*, 505 U.S. at 1027; *see also Phillips v. Washington Legal Found*., 524 U.S. 156, 167 (1998) ("[A] State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law.").

Where a variance process exists, however, a takings claim is not ripe until the government has exercised its discretion to deny that variance. *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736-37 (1997) ("[W]here the regulatory regime offers the possibility of a variance from its facial requirements, a landowner must go beyond submitting a plan for development and actually seek such a variance to ripen his claim."). In other words, the variance process serves as a "relief valve" by which government may voluntarily waive burdensome regulation which otherwise would result in a taking of private property. *Id*. at 738 (The final decision requirement "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer."). It is only once this "final decision" has been made that claimant may seek just compensation—not for the denial of the variance, but the loss of private property rights. It is precisely because the Town requires a variance—and because it now concedes it will not revisit that decision—that Haney's takings claim may now proceed. *See Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee*, 70 F.4th 12, 20 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 564 (2024).

### 3.    Haney doesn't need to allege he has a "vested" permit

The Town also asserts, "when the use of land is dependent upon the issuance of a permit or approval, the applicant cannot establish a property interest in that use unless and until they have a vested interest in the approval." MTD at 7; *id*. at 8 n.2. The Town advocates for a hard-line rule that in order to possess Fifth Amendment "private property," a complaint must allege the plaintiff

owns *more* than the fee simple: in the Town's view, Haney is required to allege he actively and successfully engaged in a race to "vest" his right to develop a specific project by spending money on architects, planners, engineers, and contractors, and on plans and permits, and applications and actual construction.[6] But whether the plaintiff possesses Fifth Amendment private property is wholly separate from the question of whether the plaintiff has acquired vested rights to a particular use. The vested rights question asks whether the government has induced an owner to proceed so far down the development path that it is unfair to stop completion of the development.

Like its "variance" argument, the Town's assertion views "private property" much too narrowly, and wrongly conflates the right to a particular use with the private property itself. The Town urges this Court to adopt a categorical rule that anything short of a vested right means an owner does not have "private property." The Supreme Court has never endorsed such a constricted definition of private property, and for good reason.[7] After all, whether Haney can enforce by injunction a right to complete a particular project is an entirely different question than whether his land is "private property" and with that ownership comes the attendant right to make economic uses.

---

[6] *See*, *e.g.*, *Brett v. Bldg. Comm'r of Brookline*, 145 N.E. 269, 271-72 (Mass. 1924) (at a certain point in the development approval process, applicant obtains "vested rights" to a particular use notwithstanding a subsequent change in the law and can enforce a "builder's remedy" by compelling the government to approve use).

[7] The sole authority relied upon by the Town involved neither takings, nor private property, nor land use regulations, but the vested right to continued licensure of a business, and—significantly here—was a procedural due process challenge where "property" (and not "private property") was at stake. There, the court analyzed the due process issue under the longstanding analysis in those cases where "property" is defined as a right the plaintiff "must 'have a legitimate claim of entitlement to[.]'" *Roslindale Motor Sales, Inc. v. Police Comm'r of Bos.*, 538 N.E.2d 312, 314 (Mass. 1989) (quoting *Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 577 (1972) (a procedural due process case in which "property," and not Fifth Amendment "private property" was alleged)).

**C.    Taken: The Complaint Alleges that the Town's Restrictions on Haney's Property and Its Use "Go Too Far"**

Having alleged ownership of private property, the complaint next alleges that the Town has undertaken actions—including overregulating the land by "preventing development"—that "go too far" in interfering with Haney's use and enjoyment of the land such that in "all justice and fairness" it should be treated as a *de facto* exercise of eminent domain. Compl. ¶¶ 108-133 (under the header "ACTIONS OF THE MASHPEE CONSERVATION COMMISSION TO PREVENT DEVELOPMENT OF GOOSEBERRY ISLAND"). *See Pennsylvania Coal*, 260 U.S. at 415 (if regulation "goes too far" it is a taking); *Armstrong*, 364 U.S. at 49 (Fifth Amendment inquiry focuses on "fairness and justice").

These allegations alone are sufficient to state a *de facto* takings claim. The Supreme Court has recognized two overlapping theories of *de facto* takings: (1) those where regulations are alleged to have deprived the owner of "all economically beneficial uses" of their property (*Lucas*); and (2) those where regulations are alleged to have severely restricted uses and have an impact on the property uses and value, but fall short of complete deprivation (*Penn Central*). But a complaint need not invoke magic words or use any of the legal theory lingo that pervades regulatory takings jurisprudence, especially for a *pro se* complainant like Haney. And importantly, these two theories of *de facto* takings are but alternative theories under a single claim: "Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims*. They are, rather, separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking." *Yee*, 503 U.S. at 534-35. The complaint plausibly alleges facts supporting both theories.

11

### 1.    Town waived challenge to *Lucas* allegations

The Town's motion does not claim the complaint's allegations supporting a *Lucas* theory are inadequate or implausible, and the Town has waived any such argument. *Noonan*, 723 F. Supp. 2d at 349 (arguments not raised in support of a motion to dismiss are deemed waived) (citing *Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999) ("It is sufficient answer that theories offered for the first time in the *reply* brief are not preserved.")); *see also Brox v. Woods Hole*, 706 F. Supp. 3d 151, 158 & n.14 (D. Mass. 2023) (argument not raised in moving papers, but only in reply are waived); *WNAC, LLC v. Verizon Corp. Servs. Grp., Inc.*, No. 21-CV-10750-ADB, 2024 WL 778794, at *7 (D. Mass. Feb. 26, 2024) (court declined to consider arguments raised for the first time in a reply brief); *Berezin v. FCA US, LLC*, No. CV 21-10852-FDS, 2023 WL 8283870, at *5 (D. Mass. Nov. 30, 2023) ("Where, as here, a moving party raises an argument for the first time in a reply, that argument is waived.").[8] Having no challenge to the complaint's *Lucas* claim, the motion to dismiss should be denied on that basis alone.

### 2.    The complaint alleges a *Penn Central* theory

The Supreme Court has identified another species of *de facto* takings where the regulation leaves the owner with substantial use or value. Under the *Penn Central* theory, the trier of fact is

---

[8] Even absent the Town's waiver, the complaint alleges a *Lucas* theory, and the motion should be denied. The complaint asserts "[t]he actions of the Defendants resulted in the Plaintiffs being unable do anything with the subject Property except to view it." Compl. ¶ 191. The complaint also alleges "[a]lternatively, if any residual value remains, actions of the Defendants alleged in this Complaint have deprived the Property of approximately 98.9% of its prior value as a residential developable waterfront lot." Compl. ¶ 192. That is enough to meet the relatively modest notice pleading bar, and *Lucas*. *See Lucas*, 505 U.S. at 1015; Fed. R. Civ. P. 8(a)(1); *Soni v. Bos. Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 91 (D. Mass. 2009) ("The purpose of the notice pleading requirements set forth in Fed. R. Civ. P. 8(a) is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (citation omitted)). All that is necessary to move forward here is for the complaint to plausibly allege that any remaining uses are not economically beneficial, which it does. *See* Compl. ¶¶ 157-158, 189-191.

charged with considering at least three fact-bound classes of evidence. *Penn Central*, 438 U.S. at 124. These factors include: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.*[9]

These cases present the quintessential "*ad hoc* factual inquiry" the Court refers to not only because the inquiry is fact-bound, but because all of the factors must be weighed alongside each other. *Penn Central* does not establish a "one-strike-you're-out" checklist; it requires a holistic evaluation in which all three factors are considered. *See*, *e.g.*, *FBT Everett Realty, LLC v. Mass. Gaming Comm'n*, 187 N.E.3d 373, 382 (Mass. 2022) (In a case applying the Fifth Amendment, the Supreme Judicial Court held, "[a]ll three factors in the multifactor *Penn Central* test 'should be taken into account' when determining whether a challenged regulation amounts to a taking.") (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984)). Each of the *Penn Central* factors "is *one* factor that points toward the answer to the question whether the application of a particular regulation to particular property 'goes too far.'" *Palazzolo*, 533 U.S. at 634 (O'Connor, J., concurring) (quoting *Pennsylvania Coal*, 260 U.S. at 415). A total absence of evidence of one factor is not conclusive, and a taking may still be found if the other factors show the regulation "may be so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 528 (2005). Thus, a *Penn Central* determination may only be reached after a "careful examination and weighing of all the relevant circumstances." *Tahoe-Sierra*, 535 U.S. at 303 (quoting *Palazzolo*, 533 U.S. at 636 (O'Connor, J., concurring)). While the absence

---

[9] The Supreme Judicial Court applies the same three-factor test to resolve *de facto* takings claims under the Massachusetts Constitution. *Daddario v. Cape Cod Comm'n*, 681 N.E.2d 833, 837 (Mass. 1997). Thus, Haney's complaint also alleges a claim under Mass. Const. art. X.

of any one factor is not a bar to a takings, a single overwhelming factor may be sufficient to find one. For example, the Supreme Court found a *Penn Central* taking even though the regulation imposed an economic impact of only $4,500 and the owner's investment-backed expectations were "dubious," because the "character of the Government regulation" was "extraordinary." *Hodel v. Irving*, 481 U.S. 704, 715-16 (1987).

### a.    Economic impact allegations

The complaint plausibly alleges the first *Penn Central* factor, a severe economic impact. Compl. ¶ 192 ("actions of the Defendants alleged in this Complaint have deprived the Property of approximately 98.9% of its prior value as a residential developable waterfront lot"). *See also* Compl. ¶¶ 90-93, 96-97. If proven, a 98.9% diminution would constitute a severe economic impact supporting a taking under *Penn Central*. The specific quantification of this diminution is a factual issue to be resolved through testimony and evidence, not on the pleadings.

The Town impliedly concedes this by raising only one offhand point, asserting in conclusory fashion that the property could be sold for "substantial value." MTD at 10. Maybe it could—but that's a factual dispute, not grounds for dismissal. The Town may disagree with these allegations, and it is free to later dispute them by offering proof that the land retains substantially more value. But resolution of that factual dispute requires evidence and credibility determinations.[10]

Without citing any authority, the Town also asserts that a takings complaint must allege "the value of the Property when [plaintiff] acquired." *Id*. The Town demands too much, and this level of pleadings detail is not necessary. A *de facto* takings claimant is under no obligation to

---

[10] Any failure of proof by a plaintiff is dealt with by summary judgment, not by dismissal at the pleadings stage. Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact … as required by Rule 56(c), the court may … (3) grant summary judgment[.]").

plead "with particularity," as a plaintiff must do to avoid dismissal of a fraud claim. *Cf.* Fed. R. Civ. P. 9(b). Moreover, "front loading" proof with valuation evidence (as opposed to merely making allegations), violates the notice pleading standard which does not require the complaint negate every possible factual dispute, but merely requires the allegations, when viewed as a whole, to put the Town on notice that Haney is asserting *de facto* takings claim, which it plainly does. *See* Compl. ¶¶ 189–191, 204–210; *Rodriguez-Reyes*, 711 F.3d at 55 ("We think that the district court subjected the complaint to an overly stringent pleading standard" by not considering it "*in toto*[.]") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). Haney need not allege with particularity the additional appraisal or other evidence of the land's before-and-after values. The complaint alleges a massive loss, and that any remaining uses (or values) are token. Compl. ¶ 192. That is enough for the Town to understand he's asserting a *de facto* takings claim.

### b.    Investment-backed expectations allegations

Haney's complaint alleges that the land is zoned for residential uses, in a district where single-family homes are the favored use. Compl. ¶¶ 90-93, 96-97. That alone is sufficient to allege that the owner of that property has expectations that might have been thwarted by the Town refusing to allow a single-family home. It is not unreasonable for an owner to believe that he could build a residence on land zoned "residential." It does not matter that the owner acquired the land already subject to regulation:

> the fact that a restriction existed at the time the purchaser took title (other than a restriction forming part of the "background principles of the State's law of property and nuisance," should have no bearing upon the determination of whether the restriction is so substantial as to constitute a taking. The "investment-backed expectations" that the law will take into account do not include the assumed validity of a restriction that in fact deprives property of so much of its value as to be unconstitutional.

*Palazzolo*, 533 U.S. at 637 (Scalia, J., concurring) (internal citation omitted). Thus, Haney plausibly alleges the expectations factor, because building a home in conformity with the zoning isn't some unilateral and unsupported conjecture, but rather an expectation *backed by law*—the Town's own zoning code. He also alleges the neighborhood character and history of how similar properties have been developed for residences gave him an expectation of being able to do the same on his land. *See* Compl. ¶ 193 ("In light of the surrounding neighborhood, which includes many developed oceanfront lots that are substantially similar to the Property, Plaintiffs had distinct and reasonable expectations that they could build a single-family home on the subject Property.").[11]

However, the Town rests most of its argument on urging the Court to adopt a categorical rule that would require an owner asserting that regulations interfere with "distinct investment-backed expectations" to allege that he acquired the property *before* the government began regulating its uses. It argues that Haney could not have formed investment-backed expectations because he acquired the land knowing it would need variances. But the complaint need not allege the Town restricted uses of Gooseberry Island only *after* Haney's acquisition, as the Town argues. MTD at 11 ("[A]t the time Plaintiff or even the Trust acquired the Property, the bylaws of which Plaintiff complains were in existence."). Contrary to the Town's assertion, there is no categorical rule that Haney is barred from invoking the Fifth Amendment's protections and has no claim merely because he acquired the land *after* the Town imposed the challenged regulations. As the Supreme Court explained when it rejected an argument that was identical to the Town's argument:

---

[11] As the complaint alleges, many homes in the area have required virtually identical variances to the ones sought by Haney. *See* Compl. ¶¶ 83-89 (alleging the Town has "approved numerous special permits and variances allowing the construction and expansion of single-family houses ….").

> Were we to accept the State's rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.

*Palazzolo*, 533 U.S. at 627.[12] The Court rejected that argument that "[a] purchaser or a successive title holder like petitioner is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking." Moreover, the blanket rule the Town urges also violates the Supreme Court's caution that no single *Penn Central* factor is "talismanic," as Justice O'Connor noted when criticizing a lower court for "elevating what it believed to be '[petitioner's] lack of reasonable investment-backed expectations' to 'dispositive status.'" *Palazzolo*, 533 U.S. at 634 (O'Connor, J., concurring); Berger, 39 J. Land Use & Envtl. L. at 208 ("[T]he answer to the question of whether a specific action has 'gone too far' and 'taken' private property for public use is a quintessentially factual question.").

### c.    Character allegations

The complaint also alleges facts supporting the third *Penn Central* factor—the "character of the government action." It is plausible that the Town actions reveal a desire to prevent development, or to acquire or preserve Gooseberry Island as it is.

First, the complaint alleges the Town has expressed a desire to keep Gooseberry Island for "Recreation and Conservation Interest," and its regulations require Haney to leave the island in substantially its natural state. *See* Compl. ¶ 74 ("The property is currently vacant."); Compl. ¶¶ 100-133 (alleging facts showing the Town has prohibited further development); Compl. ¶¶ 17-

---

[12] The Town's proposed rule not only runs contrary to the Supreme Court's holding, it is illogical (all takings claims would simply vanish upon transfer of private property to a new owner). *See Palazzolo*, 533 U.S. at 627 ("Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.").

18. The complaint alleges that in 2021, the Town sought funding for "preserving the island as conservation land/open space." Compl. ¶ 29. *See also* Compl. ¶ 30. The character of the Town's denial of use here has the same effect as would a taking by eminent domain of a conservation easement. *Cedar Point*, 594 U.S. at 155 (the State interfered with the owner's rights in the same way the taking of an easement would). Second, the complaint alleges the Town has, over the last eight decades, demonstrated that it would like to acquire Gooseberry Island, and has at times taken concrete steps towards that end. *See* Compl. ¶¶ 11-16, 20-21, 23-26. These allegations include the fact that in 2020, the Mashpee Conservation Commission voted to endorse using eminent domain to take the island. Compl. ¶ 27. Third, the complaint alleges that the Town has entered into agreements with the Mashpee Wampanoag Tribe by which the Town committed itself to deny a variance, and to keep the land in its current state. Compl. ¶¶ 19-20, 53, 56, 60. Fourth, the complaint alleges that the Town challenged ownership of the mainland Punkhorn Point. Compl. ¶¶ 134-135, 141-142. Finally, the complaint alleges that the Town is treating Haney differently than other property owners in similar circumstances. Compl. ¶¶ 87-89.

The Town fails entirely to grapple with the Complaint's allegations that the character of the government action is to strip Gooseberry Island of all economically beneficial uses—in essence, forcing the land to sit idle in its natural state as conservation lands. Rather, the Town simply notes that a few uses of land remain, such as "a camp for hunting and fishing." *See* MTD at 11.[13] But that asks this Court to abandon the common-sense (and affirmatively pleaded) notion that

---

[13] It is notable that the Town's regulations expressly prohibit for-profit camping. *See* Town of Mashpee, bylaw § 63-1 ("No person shall set up, camp in or otherwise occupy a tent, automobile or trailer ... within the limits of the Town of Mashpee between the hours of 9:00 p.m. and 6:00 a.m."). Under a decision by the Mashpee ZBA, reading 163-4, the bylaws permit camping by special permit on private land, but only without payment.

extremely-low-intensity (aka "token") activities such as personal camping are uses that are not economically beneficial. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *see also Palazzolo*, 533 U.S. at 609 ("[A] State may not evade the duty to compensate on the premise that the landowner is left with a token interest.").

This is why the Supreme Court emphasized that regulations resulting in land being "left substantially in its natural state" are typical of those "that leave the owner of land without economically beneficial or productive options for its use[,]" and "carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm." *Lucas*, 505 U.S. at 1018; *see also Lost Tree Vill. Corp. v. United States*, 787 F.3D 1111, 1116 (Fed. Cir. 2015) ("existence of residual land value derived solely from noneconomic uses" does not avoid takings liability).

A recent case illustrates the common-sense "natural state" presumption. There, the owners of an undeveloped residentially-zoned island asserted that the town's restriction on building a home was a *de facto* taking. The court rejected the town's argument that the restrictions allowed beekeeping and overnight camping, and this was enough to escape takings liability without proof by the town that these uses were economically beneficial:

> Appellants established that regulation deprived them of any use of the property beyond beekeeping or personal camping. Casting aside the inherent logistical challenges in accessing an island without a dock fringed with high quality hammock and mangroves, these activities are not economically productive. It is axiomatic that "a State may not evade the duty to compensate on the premise that the landowner is left with a token interest."

*Shands v. City of Marathon*, No. 3D21-1987, 2025 WL 396272, at *8 (Fla. Dist. Ct. App. Feb. 5, 2025) (quoting *Palazzolo*, 533 U.S. at 631).

The Town has nothing to say about these allegations, except to urge the Court to prematurely weigh the merits. *See* MTD at 10 ("the third prong of the *Penn Central* analysis, the character of the government's action favors the Defendants …"). A motion to dismiss is not the place to conclude the evidence "favors" either party.

### D.    Without Just Compensation

Finally, the complaint alleges the Town has not provided just compensation. *See* Compl. ¶ 196 ("The Defendants did not provide, offer, or guarantee compensation to the Plaintiffs at any time, and nothing in the town bylaws provides for compensation of persons in the Plaintiffs' position."). *See also* Compl. ¶¶ 1, 178-182, 185, 187. The Town's motion says nothing contrary.

## III.    CONCLUSION

"*Ad hoc*, factual inquiry" means the facts must be weighed. But not at the pleadings stage. Fact weighing is for the trier of fact. The Town's 12(b)(6) motion to dismiss claim should be denied.

DATED: April 4, 2025.

Respectfully submitted,

<u>/s/ Jeremy Talcott</u>
JEREMY TALCOTT (Cal. 311490)*          JONAS A. JACOBSON (BBO:676581)
jtalcott@pacificlegal.org                       jonas@jonasjacobson.com
ROBERT H. THOMAS (Haw. 4610-0)*          Law Offices of Jonas Jacobson
rthomas@pacificlegal.org                       2067 Massachusetts Ave., 5th Floor
555 Capitol Mall, Suite 1290                   Cambridge, Massachusetts 02140
Sacramento, California 95814                   617-230-2779
916-419-7111
*Pro Hac Vice*

*Counsel for Plaintiff*

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), Plaintiff believes that oral argument may assist the Court and wishes to be heard, and requests oral argument to be set down for hearing at such time as the Court determines.

## CERTIFICATE OF SERVICE

Jeremy Talcott certifies that the foregoing document was served on the date referenced above on all represented parties through PACER/NEXTGEN, and that there are no unrepresented participants.

*/s/ Jeremy Talcott*
Jeremy Talcott
