UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW HANEY, *as Trustee of the Gooseberry Island*, <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF MASHPEE, et al., <br><br> Defendants. | Civil Action No. 24-12562-BEM |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

Defendants (the Town of Mashpee and independent members of its Zoning Board of Appeals) have moved to dismiss Plaintiff's action for regulatory taking. For the reasons stated herein, the motion is DENIED. This case presents issues not suitable for disposition on a motion to dismiss.

The Court notes, however, that this case appears to turn on facts that may be briefed with little, if any, additional discovery. Accordingly, the parties are directed to confer and propose an expedited schedule for limited discovery and summary judgment and/or trial on the *Penn Central* factors, as discussed further below.

I.    **Relevant Background**

Plaintiff[1] owns a small island ("Gooseberry Island") in Popponesset Bay in the Town of Mashpee, Massachusetts. Dkt. 1 ("Compl.") ¶¶ 1, 66, 72–73. Plaintiff has sought to build a single-family dwelling on that property. *Id.* ¶¶ 104, 143. However, such building would violate Mashpee's zoning bylaws, unless exempted by a variance. *Id.* ¶¶ 90–99. Plaintiff's several requests for variances have been denied based on purported safety concerns. *Id.* ¶¶ 104–06, 143, 154–55. Plaintiff alleges that these concerns are merely pretextual and that Defendants are engaged in a protracted effort to try to squeeze him off the land. *Id.* ¶¶ 11–32.

The dispute over Gooseberry Island has resulted in more than a decade of litigation. *See Haney v. Mashpee Zoning Bd. of Appeals*, 2024 WL 3106198 (Mass. Super. Mar. 15, 2024) (affirming denial of zoning variance based on memorandum docketed in *Emmelluth v. Mashpee Zoning Bd. of Appeals*, 2024 WL 3106196 (Mass. Super. Mar. 13, 2024)); *Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee*, 594 F. Supp. 3d 151 (D. Mass. 2022) (dismissing as unripe takings claim based on denial of variance), *aff'd*, 70 F.4th 12 (1st Cir. 2023), *cert. denied sub nom. Haney as Tr. of Gooseberry Island Tr. v. Town of Mashpee, Mass.*, 144 S. Ct. 564 (2024); *see also Haney v. Dep't of Env't Prot.*, 100 Mass. App. Ct. 1105, 2021 WL 3502072 (2021) (affirming decision to deny Plaintiff a permit to build a bridge to the at-issue property).

On October 4, 2024, Plaintiff filed the current lawsuit, alleging a taking of property without just compensation under both the U.S. and Massachusetts constitutions. Compl. ¶¶ 1, 184–212. On February 18, 2025, Defendants moved to dismiss. Dkt. 11.

---

[1] To clarify, Plaintiff Matthew Haney sues in his capacity as trustee of the Gooseberry Island Trust. Compl. ¶ 2. Haney has a trustee predecessor, Robert D. Emmelluth, who appears to have filed the first variance application. *See* Dkt. 1-4 at 30. For simplicity, the Court refers to the trust and its former and present agents, collectively, as "Plaintiff."

**II.     Legal Standard**

Courts analyzing claims under Federal Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal cites and quotations omitted).  "A complaint should be dismissed under Rule 12(b)(6) 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

**III.    Legal Framework**

A regulatory taking occurs where the "government regulation of private property" is "so onerous that its effect is tantamount to a direct appropriation or ouster."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).[2]  Claims for regulatory takings are analyzed under the factors set forth by the Supreme Court in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).  *Lingle*, 544 U.S. at 539.  Those factors are "[t]he economic impact of the regulation on the claimant," "the extent to which the regulation has interfered with distinct investment-backed expectations," and the "character of the governmental actions."  *Id.* at 538–39 (quoting *Penn Central*, 438 U.S. at 124).

In at least two, narrow circumstances, a plaintiff may avoid the full *Penn Central* analysis by establishing a categorical, *per se* taking:  either, first, "where government requires an owner to

---

[2] The Massachusetts Supreme Judicial Court has "consistently employed Federal takings analysis in examining [takings] claims under" Massachusetts law.  *Fitchburg Gas & Elec. Light Co. v. Dep't of Pub. Utilities*, 467 Mass. 768, 775 n.8 (2014).  Accordingly, the Court will consolidate its analysis under federal law.

3

suffer a permanent physical invasion of her property—however minor," *id.* at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)); or, second, where regulations "completely deprive an owner of '*all* economically beneficial us[e]' of [his] property," *id.* (emphasis in original) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992) (brackets added in *Lingle*)).

## IV. Discussion

### A. Plaintiff's Property Interest

There is threshold disagreement as to the specific property interest alleged in the complaint. Defendants read the complaint as asserting a right to the issuance of a variance. *See* Dkt. 12 at 6–8. Plaintiff looks, instead, to his general interest in the land. *See* Dkt. 26 at 10–12. The difference matters because Plaintiff has no vested interest in the zoning board's discretionary decision, *see* Dkt. 12 at 7 (citing, *inter alia*, *Roslindale Motor Sales, Inc. v. Police Com'r of Bos.*, 405 Mass. 79, 82 (1989)), whereas Plaintiff does have an interest in property owned in fee simple, *see* Dkt. 26 at 5–6.

Plaintiff has the better argument. *See Barth v. City of Peabody*, 2017 WL 114403, at *3–4 (D. Mass. Jan. 11, 2017) (construing denial of variance as potential taking of land, rather than of the variance itself); *Smyth v. Conservation Comm'n of Falmouth*, 94 Mass. App. Ct. 790, 797 (2019) (analyzing "regulatory scheme" which generated the alleged taking, rather than just the decision to deny a variance).[3] To frame the issue otherwise would give the government a perennial

---

[3] Defendants cite *Roslindale*, 405 Mass. at 82, for the proposition that, "[w]hen the use of land is dependent upon the issuance of a permit or approval, the applicant cannot establish a property interest in that use unless and until they have a vested interest in the approval." Dkt. 12 at 7. But that is not the holding. The "permit or approval" at issue in *Roslindale* was a license to buy and sell used cars. *Roslindale*, 405 Mass. at 79. The commissioner's denial of that license did not concern the land but rather whether the applicant-company's president was a "suitable person" to hold such a license. *Id.* at 81. The opinion never addresses whether the *Roslindale* plaintiff owned any of the real estate presumably implicated by the denial, nor does it treat such land as the at-issue property for purposes of its takings analysis.

loophole—any regulation on land could escape constitutional review, so long as it is subject to a discretionary variance scheme.

### B. *Penn Central* Factors

Having identified Plaintiff's protected property interest, the Court turns to the *Penn Central* factors to determine whether Plaintiff has stated a claim.[4] From here, Defendants face an uphill battle. As Plaintiff correctly points out, *Penn Central* and its progeny "eschew[] any set formula for determining how far is too far" when it comes to government regulations, "preferring to engage in essentially ad hoc, factual inquiries." *Lucas*, 505 U.S. at 1015 (quoting *Penn Central*, 438 U.S. at 124) (cleaned up). All three *Penn Central* factors must be considered, and none is dispositive. *FBT Everett Realty, LLC v. Massachusetts Gaming Comm'n*, 489 Mass. 702, 709 (2022) (analyzing claim under federal constitution). Given the flexible nature of this multi-factor test and the forgiving standard applied on Rule 12 motions, the Court is simply unable to say that "it is clear that no relief could be granted under any set of facts that could be proved consistent with [Plaintiff's] allegations." *LaLonde*, 369 F.3d at 6.

In particular, the Court notes that Plaintiff clearly pleads, at least, significant economic impact. Compl. ¶¶ 189–92. The complaint also raises specific issues concerning the character of the taking. *See, e.g., id.* ¶¶ 11–32.[5] Defendants' argument is strongest regarding Plaintiff's

---

[4] Plaintiff also suggests that his allegations can constitute a *per se* taking under *Lucas*, Dkt. 26 at 17 n.8, *i.e.*, a situation wherein "*all* economically beneficial or productive use" of the property has been regulated away. *Lucas*, 505 U.S. at 1015 (emphasis added). Because Plaintiff's claims survive under *Penn Central*, the Court need not decide whether they would qualify for categorical protection under *Lucas*. Nevertheless, the Court notes that Plaintiff specifically alleges that the property is 98.9% depreciated by the regulation. Compl. ¶ 192. While high, 98.9% is obviously not 100%. *See Lucas*, 505 U.S. at 1019 n.8 (clarifying that 95% diminution would not qualify for categorical protection); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan Agency*, 535 U.S. 302, 330 (2002) ("[Under *Lucas*,] [a]nything less than a 'complete elimination of value,' or a 'total loss,' . . . would require the kind of analysis applied in *Penn Central*." (quoting *Lucas*, 505 U.S. at 1019–20)).

[5] The Court takes judicial notice of the findings made by Judge Perrino in *Emmelluth*, 2024 WL 3106196, including that the zoning board "appropriately considered" the issues and "focus[ed] on the public good." *Id.* at *2; *see also Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in

investment-backed expectations (or lack thereof). *See* Dkt. 12 at 11–12. Indeed, Plaintiff's complaint says nothing about what anyone, at any point, has paid for the property, its upkeep, or its development.[6] Nevertheless, this omission is insufficient to defeat Plaintiff's takings claims at this stage. *See FBT Everett*, 489 Mass. at 709.

## V. Conclusion

Accordingly, Defendants' motion to dismiss, Dkt. 11, is DENIED.

Moreover, the Court believes that the questions in this case are clear, and the record is advanced—undoubtedly a product of the multiple administrative and judicial actions the dispute has precipitated over the past decade. *See* p. 2, *supra*. Accordingly, pursuant to Federal Rules 16 and 42 and Local Rules 16.1 and 16.3, the parties are directed to confer and propose an expedited schedule for limited discovery and summary judgment and/or trial on the *Penn Central* factors.[7] In their required joint statement, *see* Local Rule 16.1, the parties should indicate precisely what additional discovery, if any, is needed to determine whether an unconstitutional taking has occurred and how long that discovery should take, with an eye toward efficient resolution.

**So Ordered.**

Dated: April 17, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

---

resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include documents from prior state court adjudications." (internal quotation marks and citation omitted)). Nevertheless, the Court does not treat these findings as conclusive for its takings analysis, particularly given the "substantial deference" that the Superior Court was obliged to show to the zoning board's decision. *See Emmelluth*, 2024 WL 3106196, at *2.

[6] Defendants are mistaken, *see* Dkt. 12 at 11–12, however, that such investments are limited to those made against the backdrop of current regulation. *See Murr v. Wisconsin*, 582 U.S. 383, 398 (2017) ("A valid takings claim will not evaporate just because a purchaser took title after the law was enacted." (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001))).

[7] To the extent Plaintiff maintains any other takings theory of liability, including under *Lucas*, those theories should also be briefed.